Good morning, ladies and gentlemen. For family-related reasons, neither Judge Rovner nor Judge Sykes can be present in court this morning. Judge Rovner is participating by speakerphone, and that has the usual difficulties of a speakerphone connection, which is that talking in both ways at the same time doesn't work very well. So there may be some awkwardness in beginning and answering questions, but if we all try not to have simultaneous conversations going both ways, that should work. Judge Sykes cannot listen as the arguments are ongoing, but she will listen to the recordings of the arguments before participating in the decisions. So let us proceed with the first case this morning, which is E.F. Transit v. Indiana Alcohol and Tobacco Co. Ms. Saharia. Good morning, and may it please the Court, Amy Saharia of Williams and Connolly for Appellant E.F. Transit. This is a pre-enforcement challenge to provisions of the Indiana Alcoholic Beverages Law that the State interprets to prohibit E.F. Transit from providing transportation services to liquor wholesalers. E.F. Transit would like to provide those services and believes that federal law entitles it to do so, but it has had no choice but to refrain from providing those services because of a credible threat of enforcement. Ms. Saharia, this is Judge Rovner. How are you? I'm good. How are you, Judge Rovner? Fine. Well, thank you. I do have a sort of bottom line question for you, and that is this. Indiana Wholesale withdrew from the proposed agreement and renewed its other warehouse lease, and E.F.T. does not, as I see it, have any current potential partners or pending contracts. So if you could explain why the claims are not too speculative to demonstrate a concrete injury here, it would be very helpful. Sure. Thank you, Judge Rovner. So I think it's important to keep in mind first that there were two different agreements that Indiana Wholesale and E.F. Transit presented to the Commission, and with respect to the 2012 agreement, that did not involve a warehouse component. It involved pure transportation services, and Indiana Wholesale withdrew from that agreement only after the Commission issued a letter warning that violations of the prohibited interest statutes would be processed by the 242 and 243, and Indiana Wholesale specifically cited the risk that both parties would be cited for violating the law as a reason for withdrawing from that agreement. Now, Mr. Terry, who is E.F. Transit's CEO, testified in this case that Indiana Wholesale and E.F. Transit continue to engage in discussions regarding transportation agreements and that in the context of a pre-enforcement challenge, I think this Court's cases make clear that parties are not required to undertake a series of futile gestures, such as drafting yet another agreement that we all know will be denied by the Commission just to establish rightness. This Court acknowledged that in the GGG landfills case, where it said the rightness doctrine does not require a plaintiff to jump through a series of hoops just to find the final hoop obstructed by a brick wall. The Supreme Court explained in the Susan B. Anthony case that in the context of a pre-enforcement challenge, what is required is that a plaintiff allege an intention to engage in the prohibited conduct, or the arguably prohibited conduct, as in this case. And E.F. Transit has alleged that intention, and that intention is very credible, not only because of Mr. Terry's deposition testimony, but because E.F. Transit and Indiana Wholesale have attempted to engage in that conduct twice. And under Susan B. Anthony and the Babbitt line of cases that led up to that decision, that is all that is required. Now, the rightness inquiry typically has two elements, fitness for judicial review and hardship to the parties. This Court acknowledged in the Commodity Trans Service case that those elements are both met when there is a credible threat of enforcement, as that test was set forth in Babbitt, and later in Susan B. Anthony. There is no question that E.F. Transit faces a credible threat of enforcement if it provides transportation services to Indiana Wholesale. As the District Court found, the Commission's position with respect to the legality of those services is proven by the record in this case. That finding is at Appendix 21. And although the state's new appellate attorneys attempt to characterize that position as only tentative, that is not what the Commission's witnesses testified to below. The Commission's witnesses, both its 30B6 witnesses, as well as the Commission chairman, who is a defendant in this case, all testified that the Commission's position unequivocally is that those agreements violate Indiana law. And not only that, the Commission actually wrote in a formal pleading in Indiana State Trial Court that it had made a determination that both agreements violate Indiana law. The Commission expressly warned E.F. Transit that violations would be processed by the excise police and the Commission prosecutor, and in the event of a prohibited interest, revocation of a wholesaler's permit is mandatory under Indiana law. And it was no doubt that risk, the risk of a mandatory permit revocation, that led Indiana Wholesale to withdraw from the 2012 agreement. As the District Court found, because the Commission considers E.F. Transit and Monarch to be the same entity, if it were to take proceedings against Monarch, it would proceed against E.F. Transit as well. And the Commission does not challenge that in this court. So for all those reasons, E.F. Transit has a very credible fear that if it were to provide transportation services to Indiana Wholesale, it would face revocation of its permit and even potentially criminal penalties. Now, the District Court nonetheless found that the claim is unright because there's no evidence the Commission has actually decided to bring an enforcement action. That is simply not required under this Court's cases or the I would cite the Court to the ACLU v. Alvarez case, the Triple G Landfills case, Metropolitan Milwaukee Association of Commerce case, all from this Court, all of which held that the threat of enforcement need not be certain to establish rightness. Now, but E.F.T. does not have any current potential partners or pending contracts, I Well, it does have a current potential partner. That potential partner is Indiana Wholesale. The CEO of E.F. Transit testified that E.F. Transit and Indiana Wholesale continue to want to have a transportation relationship. It is true that they have not, again, taken the gesture of drafting another agreement that will look very much like one of the two previous agreements. And that's because the Commission's position with respect to the legality of that is known. The Commission believes that agreement, such an agreement, to be invalid under the prohibited interest. So if I thought from reading the briefs that there is no evidence that Indiana Wholesale would be interested in pursuing the same arrangement if the preemption argument was successful, what you're saying is I would be wrong. That's correct. I would point, Your Honor, to Mr. Terry's deposition testimony, which that E.F. Transit and Indiana Wholesale continue to engage in discussions and remain interested in having a mutually beneficial relationship under which E.F. Transit would provide transportation services to Indiana Wholesale. And that was a testimony in this case by Mr. Terry. Again, the standard that the Supreme Court has articulated is that the plaintiff needs to allege an intention to engage in prohibited conduct that it believes is protected under federal law. E.F. Transit has certainly done so here. And to the extent that the credible threat of enforcement standard requires ascertaining whether that intention is credible, the evidence, both his deposition testimony and the fact of the two prior agreements, makes that allegation more than credible. Now, the state has barely attempted to defend the district court's holding in this case. It instead makes two new arguments about rightness. The first is the one that we've just discussed with respect to—the second, I should say, is one we've just discussed with respect to whether there is sufficient evidence of a potential partner. And I've just addressed that issue. I think in considering that issue, it's important to distinguish this case from cases such as Wuhan and Lyons that the state relies on. In those cases, the law at issue or the practice at issue did not directly regulate the conduct of the plaintiff. It did not command the plaintiff to do anything or command the plaintiff to refrain from doing anything. In contrast, cases such as Babbitt and Susan B. Anthony and the Seventh Circuit cases that I've already cited involve laws that actually regulate the conduct of the plaintiff. And in Wuhan itself, the court drew a distinction between these two types of cases. The case where the law regulates the plaintiff's own conduct is a typical pre-enforcement challenge, and that's what we have here. In cases like Wuhan and Lyons, where the statute does not regulate the plaintiff's conduct, the Supreme Court has acknowledged that there may need to be a higher showing of a future injury for the plaintiff to establish standing or ripeness. Now the other argument the state has made on appeal is that the case is not fit for review because the commission's interpretation of state law is only tentative. As I mentioned, the evidence does not support that characterization that it is tentative. And to the extent that the state believes there needs to be some kind of final agency action here, it's not clear what they have in mind. With respect to the 2012 agreement, there is no final agency action that can take place because the commission does not require that EF Transit or Indiana Final Agency action that could take place with respect to that agreement would be for EF Transit to start providing the services to Indiana Wholesale and incur a revocation of its permit. And then, as for the reasons I've just discussed, that's the very reason the ripeness doctrine exists, to allow plaintiffs to vindicate their federal rights without having to undertake that sanction. With respect to the 2009 agreement, there is no final agency action. In that case, it is true that Indiana Wholesale withdrew its application. There's evidence in the case that there were two reasons why it withdrew its application. The first being because it had to renew its lease during the time the commission stalled on the application. And the second being that it did not want to incur the negative ramifications that go unless the court has further questions at this time, I'll reserve my remaining time for rebuttal. Certainly, Counsel. Mr. Kraft. Good morning, Your Honors. May it please the Court. Good morning. I'm Aaron Kraft. I represent the Indiana Alcohol and Tobacco Commission and its members. Whether for reasons of ardor... I'm going to jump right in again. I'm sorry. But I am very interested in what the current status of Indiana Alcohol and Tobacco Commission versus spirited sales, which the briefs indicated was pending in the Indiana Supreme Court. If you could tell us the current status of that case. Certainly, Your Honor. The case was argued, I think, February 23rd in the Indiana Supreme Court. After the Indiana Supreme Court had granted emergency transfer. And it's currently under advisement. We haven't received a decision yet. Oh. Okay. Thank you. Okay. Thank you. So, whether it's for reasons of Article III justiciability or abstention and constitutional avoidance, the federal courts should not decide the merits of EF Transit's claim at this time for two reasons. First, the parties hotly dispute the meaning of state law. And second, EF Transit hasn't provided any concrete plans of its intended future arrangements. Now, to clarify... How do you respond to Ms. Zaharia's argument about the deposition testimony? Well, Judge Rovner, I think that Mr. Terry can speak for EF Transit and Monarch and spirited sales. But he cannot speak for Indiana Wholesale. There is not anything coming from anyone with authority from Indiana Wholesale indicating that Indiana Wholesale is interested in striking an agreement now or in the near future with EF Transit. And I think it's also important, we don't know what the terms of that agreement would be. As shown by the 2009 and 2012 agreements, the parties in the past have struck two vastly different agreements. And when you're looking at the preemption test and 21st Amendment test set out in Lebemoff Enterprises by this court, where you have to weigh the state interest versus the federal interest, it's imperative that we know the details of the future arrangements. So you think I'm in contradiction to Ms. Zaharia? You believe I'm correct when I asked how we could review any agreement when EFT has no current or proposed arrangement at this time? Absolutely, Judge Rovner. The state does agree with that position. It's possible that EF Transit could have other liquor wholesalers who are interested, but again, we don't know who those are. We don't know any concrete plans for who EF Transit's proposed dance partner is or what dance they're going to be performing. And it's important to know that when we're weighing the balances of federal and state interest under the 21st Amendment. I would like to clarify that the Commission does firmly believe now that the 2009 and 2012 agreements, proposed agreements between EF Transit and Indiana Wholesale, did violate or would violate the Indiana prohibited interest statutes. But it's important to realize that EF Transit disagrees with that view of state law. They firmly believe that the Commission is wrong on state law. And this is really what the spirited sales case is about. So really their claim is not one of preemption, but it's one of conditional preemption. If state law is as the Commission says it is, then it's preempted in their view. But it just is not the business of federal courts to decide conditional constitutional claims like that. And this is why the dispute over state law plays a role not only under Pullman abstention, which we've raised on appeal, but also under the ripeness and justiciability argument. As this court's decisions in cases like Wisconsin's decade and nuclear engineering point out, or Archer Daniels Midland, when the parties dispute state law and the plaintiff says it can do what it wants to under state law, but it can also do what it wants to under federal law. There's just not a right controversy. And this is supported by what the Supreme Court cautioned in the Wyckoff case about, you know, not intruding too far on state administrative agencies and not forcing their hands before they're ready to be forced. Going back to your earlier point, Judge Rovner, EF Transit points out that there just needs to be an intent to engage in the conduct under this court's cases and the Supreme Court's cases. But in all those cases, it's unilateral conduct. And in most of them, it's First Amendment protected speech. So you don't need someone else to go out and speak. But in this case, you do need someone else. You need a buyer of the services. And so without that buyer of the services, you don't have the type of imminent injury that's required for ripeness. I'd also like to transition to the abstention argument. Assuming that the court were to find that the case is justiciable, it should order the district court to abstain from adjudicating the merits under Pullman until the time that the state courts resolve the state law issue. Now, in their reply brief, EF Transit points out that preemption issues often aren't viewed as constitutional issues for purposes of Pullman. But this isn't a regular preemption case. This isn't a matter simply of comparing state law and federal law. The federal courts are going to have to interpret directly the 21st Amendment. And so Pullman abstention is apt to avoid the potentially unnecessary adjudication of a constitutional claim, the unnecessary interpretation of the 21st Amendment, and to avoid the federal state friction that would result from it. It's also not too late in the day to raise this argument. This court held in Waldron v. McAtee and Illinois College of Surgeons that it can be raised for the first time on appeal. Now, EF Transit points to several cases that say that raising it late, that support their argument that this is too late in the day. But in all of those cases, the district courts had decided the merits of the claim. And the parties had argued only the merits. It wasn't until after the merits had been decided against the government entity that the government argued for abstention. Here, although we did not raise abstention below, the commission has argued from the moment the cross motions for summary judgment were filed that the federal courts should not decide the merits of the claim now. And that is not inconsistent with the abstention argument. It's just another ground for avoiding the abstention. I'm sorry, another ground for avoiding the preemption claim. A basic problem in this case is that it's premature. Again, the Indiana Supreme Court granted the emergency transfer in the spirited sales case. And its decision will, in all likelihood, cast a whole lot of light on this issue from a state law perspective. And then once spirited sales is decided, we still need to know exactly what E of transit wants to do and with whom. Again, it is seeking prospective relief. It's not seeking retroactive or retrospective relief. And so its past conduct really can't control the injury inquiry under Article 3. And unless there are no further questions, the commission would ask that the court affirm the district court's judgment or alternatively remand it with instructions to stay proceedings under Pullman. Thank you. Thank you, Mr. Kraft. Anything further, Ms. Zaharia? Just three brief points, Your Honor. First, with respect to the notion that we can't bring this claim if we dispute the meaning of state law. That's simply not the case. First, the Supreme Court recognized in the Susan B. Anthony case that a plaintiff in a pre-enforcement challenge need not concede that its conduct violates state law to bring that kind of a challenge. And second, with respect to that, I would point the court in particular to the Supreme Court's decision in Morales v. Trans World Airlines, particularly relevant to this case because it's a preemption case under the sister preemption provision to the FAAAA in the American Airlines Deregulation Act. And in that case, the plaintiff was challenging not the law itself or not a regulation itself, but the state attorney general's interpretation of that law. And that interpretation made clear that it itself did not have the force of law. But nonetheless, the plaintiff was challenging the state's interpretation of a law of general applicability as the state construed that law to apply to the airline. And the Supreme Court decided that preemption case and held that the state's interpretation was preempted. That's exactly what EF Transit is seeking here. The FAAAA preempts not only the enactment of laws, but also the enforcement of laws. Second, with respect to abstention and the spirited sales case, as the state acknowledges, abstention becomes relevant only once this court finds the case to be ripe. It is a question that goes to the merits. The merits are not before this court. The merits have not been briefed by the parties before this court. So we believe that any questions relating to the spirited sales case or abstention more generally are best left to the district court on remand. Well, what do you think we should do about spirited sales? Should we wait for the Supreme Court of Indiana? I don't believe so, Your Honor, because the spirited sales question really goes to the merits of EF Transit's claim in this case. Well, exactly. So if spirited sales rules essentially in EF Transit's favor, federal issues may drop out. It is possible, depending on how the Supreme Court resolves that case, that the federal issues may drop out. Well, that's the question. Correct. So if this court decides the case is ripe and then turns to the merits, because, of course, the court can't even consider the merits until it first determines the question of jurisdiction, we believe the appropriate course would be to remand the case to the district court and let the district court decide whether it should hold any decision on the merits for spirited sales. The final point I just want to make is this case is not like the cases that the state's attorney cited, where it's simply unknown at all how the agreement would apply to the plaintiff's conduct. We have two agreements in the record in this case. Those are the services that EF Transit would like to provide, and the court can consider the preemption question with respect to those agreements. We respectfully request that the court reverse the judgment below and remand for further proceedings. Thank you, counsel. The case is taken under advisement.